Christopher CHAVIES, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2010–SC–000479–MR.

Supreme Court of Kentucky.

Oct. 27, 2011.

Thomas More Ransdell, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

A circuit court jury convicted Christopher Chavies of manufacturing methamphetamine; receipt of stolen property worth $500 or more, but less than $10,000; and being a second-degree persistent felony offender. The trial court sentenced him to a total of fifty years' imprisonment.

Chavies now appeals his conviction as a matter of right,[1] contending the judgment must be reversed because of (1) improper admission of evidence seized during a search of his vehicle, (2) insufficient evidence of the offense of manufacturing methamphetamine, (3) insufficient evidence of the offense of receipt of stolen property, and (4) improper admission of amended and dismissed charges in the penalty phase of the trial.

We find no reversible error on appeal and affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL HISTORY.

A Kentucky state police officer, while driving through his neighborhood, spotted a man standing in the garage of a for-sale house and an unfamiliar car pulling out of its driveway. The officer stopped the driver of the car, Chavies, for not wearing a seatbelt and reckless driving. After arresting Chavies for an unrelated outstanding warrant, the officer drove back to the for-sale house from which Chavies had come. A realtor provided a key; and police searched the house, finding a trespasser, Owen Hurley, hidden in a closet. Hurley admitted to making and smoking methamphetamine in the house; and he reported that Chavies took items from the house, including a computer and a box of lights. Based on this information, police looked through the window of Chavies's car and saw a laptop bag and a box of lights. Upon searching the vehicle, police discovered numerous items stolen from the residence and a mobile methamphetamine lab.

The grand jury indicted Chavies, charging him with second-degree burglary; manufacturing methamphetamine; receipt of stolen property worth $500 or more, but less than $10,000; and being a first-degree persistent felony offender. Chavies made two motions to suppress the evidence found in his car, which the trial court denied. The jury convicted Chavies of manufacturing methamphetamine; receipt of stolen property worth $500 or more, but less than $10,000; and being a second-degree persistent felony offender.

## II. ANALYSIS.

### A. The Trial Court Properly Denied Chavies's Motions to Suppress Evidence Seized in the Search of His Vehicle.

Chavies argues the trial court erred in denying his two motions to suppress evidence seized during the search of his vehicle. In the first motion, he contended the traffic stop was invalid because it was not based on reasonable suspicion of criminal activity. Chavies claimed in the second motion that the warrantless search of his car was illegal because it did not fall under an exception to the warrant requirement. We find that the trial court properly denied both of these motions.

The Fourth Amendment of the U.S. Constitution, applicable to the states through the Fourteenth Amendment, and Section 10 of the Kentucky Constitution provide safeguards against unreasonable searches and seizures. "Section 10 of the Kentucky Constitution provides no greater protection than does the federal Fourth Amendment."[2]

The standard of review for a trial court's ruling on a suppression motion is two-fold. The trial court's factual findings are reviewed for clear error and are deemed conclusive if supported by sub-

---

1. Ky. Const. § 110(2)(b).

2. *LaFollette v. Commonwealth*, 915 S.W.2d 747, 748 (Ky.1996) (citation omitted).

stantial evidence.[3] And the trial court's application of the law to the facts found is reviewed de novo.[4]

### 1. Stop of Chavies's Vehicle.

■ Chavies argues the trial court erred by denying his first motion to suppress because the police officer did not have articulable reasonable suspicion of criminal activity to stop his vehicle. He claims his actions did not constitute reckless driving, and the officer could not see whether he was wearing a seat belt. We find that the trial court properly denied Chavies's motion to suppress because there is substantial evidence supporting the trial court's factual findings, and the trial court properly applied the law to the facts.

"[S]topping an automobile and detaining its occupants constitute a 'seizure'" under the Fourth Amendment.[5] Traffic stops are similar to *Terry* stops and must be supported by articulable reasonable suspicion of criminal activity.[6] "[T]he level of articulable suspicion necessary to justify a stop is considerably less than proof of wrongdoing by preponderance of the evidence."[7]

At the evidentiary hearing concerning Chavies's first motion to suppress, the arresting officer testified that he followed Chavies as he turned left out of the subdivision. As Chavies turned left again into the next driveway, the officer saw he was not wearing a seatbelt. The officer turned his car around and found that Chavies had pulled out of the driveway and was turning back into the subdivision. When Chavies saw the officer, he jerked back into the main road. The officer stopped him for driving without a seat belt and reckless driving.

Based on the officer's testimony, we find there is substantial evidence supporting the trial court's finding that the officer stopped Chavies for not wearing a seatbelt and reckless driving. The officer had articulable reasonable suspicion that Chavies violated these traffic laws. So the traffic stop was constitutional, and the trial court properly denied Chavies's first motion to suppress.

### 2. Search of Chavies's Vehicle.

Chavies argues the trial court erred by denying his second motion to suppress because the warrantless search of his vehicle was unconstitutional. We find that the trial court properly denied the motion to suppress because the search and seizure were valid under the plain-view and automobile exceptions to the warrant requirement.

The constitutional right to be free from unreasonable searches and seizures "is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer."[8] But there are exceptions to the warrant requirement, including the plain-view and automobile exceptions.

3. *Bauder v. Commonwealth*, 299 S.W.3d 588, 591 (Ky.2009) (citations omitted); Kentucky Rules of Criminal Procedure (RCr) 9.78.

4. *Commonwealth v. Kelly*, 180 S.W.3d 474, 476–77 (Ky.2005) (citations omitted).

5. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (citations omitted).

6. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (*citing Ter-*ry *v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

7. *Commonwealth v. Banks*, 68 S.W.3d 347, 351 (Ky.2001) (*citing United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)).

8. *California v. Carney*, 471 U.S. 386, 390, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).

### a. Plain–View Exception.

■ The plain-view exception to the warrant requirement applies when the object seized is plainly visible, the officer is lawfully in a position to view the object, and the incriminating nature of the object is immediately apparent.[9]

■ Some confusion exists concerning a potential fourth element to the plain-view exception—inadvertent discovery by the police. It is necessary to clarify in this opinion whether inadvertent discovery is part of the plain-view exception in Kentucky because, if it is, the plain-view exception cannot apply to the police seizure of evidence from Chavies's car.[10]

The U.S. Supreme Court included the inadvertent discovery element in *Coolidge v. New Hampshire.*[11] But the majority of the Court never expressly adopted the *Coolidge* plurality's discussion of the plain-view exception.[12] The Court resolved the issue in *Horton v. California* by holding that "even though inadvertence is a characteristic of most legitimate 'plain-view' seizures, it is not a necessary condition."[13] Following the Supreme Court's lead, this Court stated in dicta that the plain-view exception no longer requires inadvertent discovery of the evidence.[14] But in *Hunt v. Commonwealth,*[15] we included the inadvertent discovery element in the plain-view exception analysis.

*Hunt* does not signal a reversion in Kentucky law back to requiring inadvertent discovery in the plain-view exception. The inadvertent discovery analysis was not central to the holding in *Hunt.* Because Section 10 of the Kentucky Constitution provides no greater protection than the Fourth Amendment, we do not require inadvertent discovery of the evidence under the plain-view exception.

Chavies contends (1) the laptop and lights seized were not in plain view; (2) the incriminating nature of the objects was not immediately apparent; and (3) even if the plain-view exception does apply, the police were not authorized to search the entire vehicle. We disagree.

■ The laptop and lights were in plain view. Chavies argues the computer and lights themselves were not visible because the computer was in a laptop bag, and the lights were in a box. We disagree. Hurley said Chavies took lights packaged in a box and a computer. Police saw in Chavies's car the original packaging for the lights, as Hurley described, and a laptop bag. It is sufficient that the police saw a laptop bag in the car. Police did not have to see the laptop itself as long as they had probable cause to believe the laptop bag was stolen or contained a stolen computer.

■ The incriminating nature of the evidence was immediately apparent.

9. *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (citations omitted).

10. We note that Chavies does not include the requirement in his brief, and the Commonwealth includes it but fails to discuss its significance.

11. 403 U.S. 443, 469, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

12. *Texas v. Brown,* 460 U.S. 730, 737, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

13. 496 U.S. 128, 130, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

14. *Hazel v. Commonwealth,* 833 S.W.2d 831, 833 (Ky.1992).

15. 304 S.W.3d 15, 27 (Ky.2009) ("Under this [plain-view] exception to the warrant requirement, law enforcement officials may seize evidence without a warrant when the initial entry was lawful, the evidence was inadvertently discovered, and the incriminating nature was readily apparent.") (citation omitted).

Where the nature of the evidence is not inherently criminal, probable cause of its incriminating nature is necessary.[16] In the context of the plain-view exception, the U.S. Supreme Court defined probable cause as

> a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," (citation omitted) that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. (Citation omitted.)[17]

Chavies argues the police could not have probable cause to believe the items were stolen based on Hurley's statements alone. He relies on various cases that discuss the reliability of anonymous tips as bases for probable cause and the reliability of co-defendants' confessions for purposes of admissibility at trial. But we are not dealing with an anonymous tip or the admissibility of Hurley's confession at trial.

The police found Hurley hiding in a house that did not belong to him. He admitted to making and smoking methamphetamine in the house and reported to police that Chavies stole items from the house, including a computer and lights in a

box. Earlier, police saw Chavies leave the same house, stopped him for a traffic violation, and arrested him for an outstanding warrant. When police looked into the back of the car, they saw a laptop bag and a light box. Common sense led police to believe the laptop bag may have contained a computer. So the police had probable cause to believe the items were stolen from the victim's house.

Lastly, Chavies argues that under the plain-view exception, the police could seize only the laptop and lights, not the other stolen items found in his car. "[T]he ['plain-view'] doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges."[18] But seeing incriminating evidence in plain view in a vehicle can give rise to probable cause to search the entire vehicle.[19] Here, seeing the laptop bag and box of lights gave police probable cause to believe Chavies's car contained other stolen items. So the police could search the entire vehicle under the automobile exception and seize all evidence, as discussed below.

#### b. Automobile Exception.

The automobile exception to the warrant requirement applies when there is probable cause to believe an automobile contains evidence of criminal activity and the automobile is readily mobile.[20]

16. *Arizona v. Hicks,* 480 U.S. 321, 326–28, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) ("[P]robable cause to believe the equipment was stolen was required.").

17. *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

18. *Coolidge,* 403 U.S. at 466, 91 S.Ct. 2022.

19. *See Cooper v. Commonwealth,* 577 S.W.2d 34 (Ky.App.1979) (Where state trooper stopped defendant's automobile for speeding

violation and smelled marijuana smoke emanating from driver's window, trooper had probable cause to search ashtray for contraband, and after seizing six "roaches" from ashtray, trooper had probable cause to believe that other contraband was in automobile.) (*overruled on other grounds* ).

20. *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) (citations omitted).

■ Chavies contends his automobile was not readily mobile when searched because he was under arrest at the time of the search. Essentially, he argues that the ready mobility element is an exigency requirement that cannot be met when a defendant is already arrested. We disagree.

■ Ready mobility refers to the capability of using an automobile on the highways, not the probability that it will be used to do so. In *California v. Carney,* the Supreme Court held that a stationary automobile is *"readily mobile by the turn of an ignition key, if not actually moving."* [21] "An individualized assessment of the likelihood that the car will be driven away or that its contents will be tampered with during the period required to obtain a warrant is unnecessary." [22] And a search of an automobile "is proper even if the occupants or owners are taken into custody." [23] The mobility of an automobile is an exigent circumstance, per se.[24] And "the 'automobile exception' has no separate exigency requirement." [25] So Chavies's automobile was readily mobile even though Chavies was under arrest at the time officers conducted the search.

■ In addition, the exigent circumstance of ready mobility is not the only basis for the automobile exception.

The reasons for the vehicle exception, we have said, are twofold. (Citation omitted.) "Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." (Citation omitted.)

Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception. (Citation omitted.) [26]

The second requirement of the automobile exception is probable cause to believe the automobile contains evidence of criminal activity. Chavies contends the police did not have probable cause to search his car because Hurley's incriminating statement was not trustworthy. For the reasons discussed above, we find that the police did have probable cause to believe the car contained stolen property.

Police had probable cause to believe the laptop bag and box of lights sitting in plain view in Chavies's car were stolen items. Once police saw these items, the police had probable cause to believe the car contained other incriminating evidence. When police have probable cause to believe a car contains evidence of criminal activity, they may search the entire vehicle, including areas that are not in plain view.[27] So they

21. *Carney,* 471 U.S. 386 at 393, 105 S.Ct. 2066.

22. 79 C.J.S. *Searches* § 113 (*citing Michigan v. Thomas,* 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982)).

23. *Id.* (*citing Florida v. Meyers,* 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984)); *See also United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (police officers could conduct a warrantless search of a vehicle under the automobile exception when the defendant was arrested and handcuffed).

24. *King v. Commonwealth,* 302 S.W.3d 649, 654 (Ky.2010) (citations omitted) (*abrogated on other grounds by Kentucky v. King,* —— U.S. ——, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011)).

25. *Maryland v. Dyson,* 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999).

26. *Carney,* 471 U.S. at 391, 105 S.Ct. 2066.

27. *Estep v. Commonwealth,* 663 S.W.2d 213, 215 (Ky.1983).

could search Chavies's entire vehicle and seize all evidence discovered.

## B. The Trial Court did not Err by Denying a Directed Verdict for the Offense of Manufacturing Methamphetamine.

Chavies argues the trial court erred when it denied his motion for a directed verdict for the offense of manufacturing methamphetamine. We disagree and uphold the trial court's ruling.

 When ruling on a directed verdict, the trial court must view the evidence in favor of the Commonwealth.[28] And questions of the credibility and weight of evidence are left to the jury.[29] A directed verdict must be denied if a reasonable juror could find the elements of the crime proven beyond a reasonable doubt.[30] On appellate review, "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal."[31]

The grand jury charged Chavies with manufacturing methamphetamine under Kentucky Revised Statutes (KRS) 218A.1432. A person is guilty of manufacturing methamphetamine if he knowingly and unlawfully, "[w]ith intent to manufacture methamphetamine possesses two (2) or more chemicals or two (2) or more items of equipment for the manufacture of methamphetamine."[32]

 Chavies contends the Commonwealth failed to prove beyond a reasonable doubt that he possessed two or more chemicals for the manufacture of

methamphetamine because they did not present evidence of chemical testing. We disagree. Circumstantial evidence is sufficient to sustain a conviction for an offense involving a controlled substance.[33] "[C]hemical testing of an alleged controlled substance is not required to sustain a conviction."[34]

At trial, the investigating officer testified that he was trained in cleaning up methamphetamine labs. He testified that he found at the scene four plastic bottles; three were inactive methamphetamine labs, and one was an HCL generator used to cook methamphetamine. Three of these bottles tested positive for ammonia when he performed a Draeger test at the scene. Ammonia is a key component in manufacturing methamphetamine. The Commonwealth introduced photographs of the bottles. The detective testified that the various bottles contained different combinations of lithium, ether, and pill soak.

The detective's testimony was based upon his training and experience in cleaning up methamphetamine labs and was not merely speculative, as Chavies claims. Given the detective's testimony, it would not be clearly unreasonable for a jury to find Chavies guilty of possessing two or more chemicals for the manufacture of methamphetamine.

 Chavies also argues the Commonwealth failed to prove he possessed two or more items of equipment for the manufacture of methamphetamine because they did not offer evidence that he owned the vehi-

---

28. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991).

29. *Id.*

30. *Id.*

31. *Id.* (citations omitted).

32. KRS 218A.1432(1)(b).

33. *Jones v. Commonwealth*, 331 S.W.3d 249, 253 (Ky.2011).

34. *Id.* at 252.

cle in which the equipment was found. We disagree.

The detective testified at trial that he found rock salt, plastic tubing, a measuring cup, a spoon, a funnel, and lighter fluid in the vehicle. He testified that these items are commonly used in cooking methamphetamine. The Commonwealth also introduced photographs of the items. Chavies offered no proof that someone else owned the vehicle or the methamphetamine chemicals and equipment. A reasonable juror could find beyond a reasonable doubt that Chavies knowingly and unlawfully possessed these items because the police found them in the vehicle Chavies was driving.

## C. Chavies Waived the Sufficiency of the Evidence Issue for the Offense of Receipt of Stolen Property.

Chavies contends the trial court erred in denying his motion for a directed verdict for the offense of receipt of stolen property because the Commonwealth failed to prove the value of the stolen items. The grand jury charged Chavies with receipt of stolen property valued at $500 or more, but less than $10,000, by knowingly and unlawfully receiving and possessing a stolen computer, DVD player, and jewelry. For the offense of receipt of stolen property, "the Commonwealth must prove the market value of the stolen items at the time and place of the theft."[35] Chavies argues that no evidence was introduced at trial of the value of the computer, DVD player, or jewelry, either individually or as a group. He contends the issue is proper-

ly preserved for appeal by his "motions for a directed verdict and by his objection to the giving of any instructions." But he requests palpable error review if the Court finds the error unpreserved.

▇▇▇▇▇ We will not review the alleged error because Chavies affirmatively waived the sufficiency of the evidence issue in the trial court. To preserve a trial court's denial of a directed verdict for appellate review, a defendant must move for a directed verdict at the close of the Commonwealth's case and renew the motion at the conclusion of all the evidence.[36] And a defendant "must state specific grounds for relief and should identify which elements of the alleged offense the Commonwealth has failed to prove."[37] When a defendant fails to preserve an error based upon the sufficiency of the evidence, an appellate court can review the issue for palpable error.[38] But palpable error review will not be granted when a defendant did not move for a directed verdict[39] or affirmatively waived the objection in the trial court.

At the close of the Commonwealth's case, Chavies moved for a directed verdict for the burglary and manufacturing methamphetamine charges. But he conceded that the Commonwealth's proof was sufficient to survive a motion for a directed verdict for the offense of receipt of stolen property. At the conclusion of all the evidence, Chavies renewed his motion for a directed verdict only for the burglary and methamphetamine charges. It is clear that Chavies did not intend to preserve the

**35.** *Commonwealth v. Reed,* 57 S.W.3d 269, 270 (Ky.2001) (citations omitted).

**36.** *Commonwealth v. Jones,* 283 S.W.3d 665, 669 (Ky.2009) (citations omitted). But if a motion for a directed verdict is not followed by more evidence, it need not be renewed. *Hampton v. Commonwealth,* 231 S.W.3d 740, 750 (Ky.2007).

**37.** *Jones,* 283 S.W.3d at 669 (citations omitted).

**38.** *Id.* at 668.

**39.** *Hatton v. Commonwealth,* 409 S.W.2d 818 (Ky.1966); *See also Hart v. Commonwealth,* 296 S.W.2d 212, 214 (Ky.1956).

sufficiency issue for receipt of stolen property for appeal.

Because Chavies affirmatively waived his objection to the sufficiency of the evidence for the offense of receipt of stolen property, we will not review the alleged error.

**D. The Trial Court Erred by Allowing the Introduction of Amended and Dismissed Charges During the Penalty Phase.**

Chavies argues the trial court erroneously allowed the introduction of dismissed and amended charges in the penalty phase of his trial. We agree that admission of the indictment was erroneous but find it does not rise to the level of palpable error.

This issue was not preserved for appellate review. But Chavies argues that it should be treated as if preserved because sentencing issues are jurisdictional. We disagree.

"Sentencing issues may be raised for the first time on appeal" because sentencing is jurisdictional.[40] But not all sentencing issues are jurisdictional.

> [T]he phrase "sentencing issues" does not refer to any issue that arguably affected the ultimate sentence imposed. Instead, it refers to a claim that a sentencing decision is contrary to statute, as in *Ware*, or was made without fully considering what sentencing options were allowed by statute, as in *Hughes*.

Such sentencing issues are "jurisdictional," (citation omitted) . . . .[41]

At issue is what it means for a sentencing decision to be "contrary to statute." The introduction of dismissed and amended charges was contrary to KRS 532.055. But the sentencing decision itself was not contrary to statute. In *Ware v. Commonwealth*, the trial court failed to consider whether or not the defendant was eligible for probation, as required by KRS 533.010.[42] In contrast, the issue here is an evidentiary one. Erroneous evidentiary procedures in the penalty phase are not contradictory to statute within the meaning of *Ware*. So this sentencing issue arising in the penalty phase of the trial proceeding is not jurisdictional and is reviewed for palpable error under RCr 10.26.[43]

If a palpable error has occurred, relief may be granted if the error resulted in manifest injustice.[44] Manifest injustice is found only if the error seriously affected the "fairness, integrity, or public reputation of the proceeding."[45]

Chavies argues he was substantially prejudiced by the introduction of a prior indictment in the penalty phase of trial. The indictment charged Chavies with first-degree burglary, but he was convicted of second-degree burglary under a guilty plea. The indictment also charged Chavies with being a second-degree per-

**40.** *Cummings v. Commonwealth*, 226 S.W.3d 62, 66 (Ky.2007) (citations omitted).

**41.** *Grigsby v. Commonwealth*, 302 S.W.3d 52, 54 (Ky.2010) (*citing Ware v. Commonwealth*, 34 S.W.3d 383 (Ky.App.2000), and *Hughes v. Commonwealth*, 875 S.W.2d 99 (Ky.1994)).

**42.** 34 S.W.3d at 385–86.

**43.** Even if this sentencing issue is jurisdictional, the error is still unpreserved and reviewed

for palpable error. *See Ladriere v. Commonwealth*, 329 S.W.3d 278, 280–81 (Ky.2010); *See also Smith v. Commonwealth*, 2008–SC–000786–MR, 2010 WL 1005907, at *6 (Ky. Mar. 18, 2010).

**44.** *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006).

**45.** *Id.* at 4 (citations omitted).

sistent felony offender, which was later dismissed. In this case, the jury found Chavies guilty of being a second-degree persistent felony offender and recommended a sentence of fifty years' imprisonment for manufacturing methamphetamine and ten years' imprisonment for receipt of stolen property, to be served concurrently.

■■■■■■■ In the penalty phase, the Commonwealth can introduce evidence of the defendant's prior felony and misdemeanor convictions.[46] Prior dismissed charges are not admissible in the penalty phase.[47] So the introduction of the indictment showing the charges that were later dismissed and amended was erroneous. But the error does not rise to the level of palpable error.

In *Robinson v. Commonwealth*, we held that introduction of a computer printout was erroneous where it included prior charges subsequently dismissed and showed the defendant was late on paying court fines.[48] The issue in that case was preserved for appellate review, and the Court reversed and remanded for sentencing.[49] This Court also reversed and remanded for sentencing in *Perdue v. Commonwealth*,[50] which involved the introduction of erroneous evidence indicating the defendant previously was convicted of murder when, in fact, those charges had been amended to manslaughter.[51] The trial court admonished the jury to disregard the reference to murder and only consider the manslaughter convic-

tion.[52] The Court found this evidence highly prejudicial because the defendant was on trial for murder, the jury could conclude that he had escaped just punishment in the past, and the jury sentenced the defendant to death.[53]

This case is distinguishable from *Robinson* and *Perdue*. In both cases, the error was preserved for appeal. Here, we review the issue for palpable error. The decision to reverse and remand in *Robinson* was partly motivated by the concern of introducing compilations of data through witnesses that cannot authenticate the document.[54] There is no similar concern in this case because the Commonwealth introduced an indictment, not a data compilation. Unlike *Perdue*, this is not a capital case; and Chavies did not receive the maximum penalty of life for manufacturing methamphetamine.[55]

Moreover, the dismissed and amended offenses were never pointed out to the jury by the trial judge, the Commonwealth, or the Commonwealth's witness. It is more likely that that the jury's recommendation of fifty years' imprisonment for manufacturing methamphetamine and twenty years' imprisonment for receipt of stolen property was the result of Chavies's multiple prior convictions, including second-degree burglary, theft of a firearm, criminal mischief, theft of property valued at $300 or more, first-degree robbery, and attempted kidnapping of a minor. So we cannot find that the erroneous introduction

46. KRS 532.055(2)(a)(1).

47. *Robinson v. Commonwealth*, 926 S.W.2d 853, 854 (Ky.1996).

48. *Id.*

49. *Id.* at 855.

50. 916 S.W.2d 148 (Ky.1995).

51. *Id.* at 165.

52. *Id.* at 166.

53. *Id.* at 165.

54. *Robinson*, 926 S.W.2d at 854.

55. Chavies did receive the maximum penalty for the receipt of stolen property charge, but it ran concurrently with his penalty for manufacturing methamphetamine.

of prior amended and dismissed charges seriously affected the fairness of the proceeding. We uphold Chavies's sentence of fifty years' imprisonment for manufacturing methamphetamine, receipt of stolen property, and being a second-degree persistent felony offender.

### III. CONCLUSION.

For the foregoing reasons, the trial court's judgment is affirmed.

All sitting. All concur.